**William E. COONS, Plaintiff-Appellant,**

v.

**WASHINGTON MIRROR WORKS, INC. and Electric Motors Corp., Defendants-Appellees.**

No. 433, Docket 72-1527.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1973.

Decided April 2, 1973.

Rehearing Filed April 13, 1973.

Rehearing Denied May 8, 1973.

Charles Glatzer, New York City, of counsel (Glatzer & Silver, New York City, on the brief), for plaintiff-appellant.

John F. Scully, New York City (Smith & Griffin, and Richard D. Smith, New York City, on the brief), for Washington Mirror Works, Inc.

Murray L. Lewis, New York City (Fuchsberg & Fuchsberg, New York City, on the brief), for Electric Motors Corp.

Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

On June 11, 1969, William Coons, a truck driver, delivered a load of glass to Washington Mirror Works' Bronx warehouse. As one of the crates of glass was being unloaded by means of an electric overhead hoist designed and installed by Electric Motors, one of the wheels of the hoist slipped off the track along which it moved laterally. As a result, the crate, which weighed approximately 1100 pounds, fell on Coons' right leg, pinning him to the bed of the truck. Employees of Washington Mirror lifted the crate from his leg, and Coons was rushed to Fordham Hospital, where it was discovered that he had suffered a fracture of the lower leg and severe fracture and dislocation of his right ankle. Coons was able to return to work on March 9, 1970, although until about April 20, 1970 he could serve only as a helper, not as a driver.

The trial of this action was conducted in three stages. First, the issue of Washington Mirror's and Electric Motors' liability to Coons was tried to a jury. By a special verdict it held Washington Mirror liable for negligence on the theory of *res ipsa loquitur* and Electric Motors liable for breach of warranty. This same jury then heard evidence with respect to the damages suffered by Coons and, again by special verdict, awarded him $14,160 for hospital and medical expenses, lost wages, and pain, suffering and disability. The jury specifically declined to award any damages for future pain, suffering and disability. Finally, the cross-claims for indemnification by the two defendants were tried to the court on the basis of the record developed during the first two stages. The trial court, D.C., 344 F.Supp. 653, concluded that each was equally responsible for the accident and therefore awarded each the right to 50% contribution.

Coons' sole argument on this appeal is that the jury awarded him insufficient damages for pain and suffering, past and future, because of an improper evidentiary ruling by the district court and a plainly erroneous omission from its charge. Three witnesses testified during the portion of the trial which dealt with plaintiff's damages. Coons testified concerning his lost wages, and his past and continuing suffering; a physical therapist described the number and nature of the treatments she had administered to Coons; and a Dr. Tuby gave his expert opinion that Coons would permanently suffer some pain and swelling in his right ankle whenever he performed

strenuous work.[1] Coons was then recalled and testified that three days earlier he had been examined by a Dr. Stella, a physician chosen by Washington Mirror, and that under Dr. Stella's direction Coons' leg had been x-rayed and that the x-rays had been delivered to Dr. Stella. The trial court ordered the testimony concerning the x-rays stricken, and directed the jury to disregard it and not to draw any inferences from it.

■ The exclusion of Coons' testimony concerning the x-rays in the possession of Dr. Stella was not erroneous. The existence of the x-rays and their non-production by Washington Mirror did not give rise to any inference that they supported Coons' claim of future pain and suffering because they were equally available to Coons, i. e. the actual x-rays taken or others which Coons could have had taken. See McCormick on Evidence, § 272, 656–658 (2d ed. 1972).

■ In charging the jury, the court noted the failure of Coons to call his treating physician and stated that the jury might "draw such inferences as [it] believe[d] appropriate from this particular feature," but he did not mention the failure of the defendant Washington Mirror to call Dr. Stella or refer to any inferences which could have been drawn from this. Plaintiff was entitled to the charge that the jury could draw the inference from Washington Mirror's failure to produce Dr. Stella, who was retained by it and who had examined Coons on its behalf, that if Dr. Stella had testified, he would not have contradicted or qualified the testimony of plaintiff's medical expert. Laffin v. Ryan, 4 A.D. 2d 21, 162 N.Y.S.2d 730, 734 (3d Dept. 1957). Accord, Rice v. Ninacs, 34 A.D. 2d 388, 312 N.Y.S.2d 246, 249 (4th Dept. 1970). Plaintiff's counsel neither requested such a charge nor excepted to the charge as delivered and by virtue of

his failure to claim this right at trial he is precluded from asserting it here, Rule 51 F.R.Civ.P., unless the omission constituted "plain error." Finn v. Wood, 178 F.2d 583, 584 (2 Cir. 1950). On the face of the record here, particularly since plaintiff's counsel strenuously argued this inference in his summation, we do not believe a "miscarriage of justice" has occurred. 5A Moore's Federal Practice ¶ 51.04 at 2515 (1971).

Therefore, we affirm the judgment of $14,160 in favor of Coons against Washington Mirror and Electric Motors.

Turning to the cross-appeals from the trial court's assessment of equal liability upon Washington Mirror and Electric Motors, there are two aspects of the findings of fact which were critical to the apportionment of liability. First is the finding that the hoist "was of improper, inadequate design which allowed the wheels . . . to be pulled off . . . by the weight of the load," and that therefore Electric Motors had breached its warranty and that this breach was a cause of Coons' accident. Second, the court found that Washington Mirror had been negligent in its operation of the hoist because (1) the crates were dragged along the floorbed of Coons' truck while they were attached to the hoist, and (2) the crates were improperly slung from the hoist, and that these acts of negligence were causes of the accident. The court, therefore, apportioned the liability equally.

■ Electric Motors asserts that the two factors found by the district court to have constituted negligence on the part of Washington Mirror also constituted misuse of the hoist, and therefore Washington Mirror cannot recover against Electric Motors for breach of warranty. Washington Mirror contends that the findings of improper slinging and negligent dragging were clearly er-

1. Dr. Tuby never treated Coons; he merely examined plaintiff twice. In fact, during cross-examination it was established that Dr. Tuby's practice is presently limited to the examination of injured people and the preparation of reports for their lawyers. Coons was treated only by the doctors at Fordham Hospital and a Dr. Winters whose office was near plaintiff's home in New Jersey, none of whom was called to testify.

roneous and unsupported by the evidence, leaving only the improper design of the hoist as the proximate cause of the accident. We agree with Washington Mirror.

To begin with, it should be noted that these factual findings by the court on the cross-claims are inconsistent with its rulings during the trial on the defendants' liability to Coons. At that time, the court held that no specific negligent acts by Washington Mirror had been established, and therefore the jury could only conclude there was fault on the theory of *res ipsa loquitur*. Then on the cross-claims, which, by stipulation, were to be decided on the basis of the same record, the court found two specific negligent acts. The two conclusions are inherently inconsistent. We hold that the court was correct in its original position and incorrect in its later conclusion that Washington Mirror had committed specific acts of negligence.

The only "testimony" concerning improper slinging was offered by counsel for Electric Motors in the course of the leading questions he posed to Earl Cadwell, an expert witness called by Washington Mirror. When he finally asked an acceptably phrased question concerning Washington Mirror's method of slinging the crates for hoisting, the exchange was as follows:

"Q. If force was applied to the top of the crate, could it cause that crate to topple?

\* \* \* \* \* \*

A. It couldn't topple if the crate was under suspension in the sling."

At no time did Cadwell testify that the crates had been improperly slung; indeed, at one point he stated that the crates would not have been properly slung if the method suggested by counsel had been employed. Moreover, neither of Electric Motors' expert witnesses testified that the crates had been improperly slung from the hoist. Because there was no evidence to support this conclusion by the district court, we are "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

Similarly, there is no evidence to support the trial court's finding that the dragging of the crates was a proximate cause of the accident. Cadwell attributed the accident to "improper, inadequate design." William Pariser, the president of Electric Motors and designer of the hoist, testified that in his opinion the accident was caused by "either the cable slipping or the [crate] knocking against something." Arthur Weber, another expert called by Electric Motors, said that only a "jarring impact" would have caused the hoist to slip off its track, but a steady drag would not have caused this to happen. Because there is no basis in the record to support the trial court's conclusion that the dragging of the crates was a proximate cause of the accident, we are again constrained to conclude that it was clearly erroneous.

■ On the other hand, there is ample evidence to sustain the conclusion of both the jury and the court that Electric Motors had improperly designed the hoist and that this caused the accident. Cadwell, Pariser and Weber all testified that two additional wheels on the side of the hoist that fell would have prevented the accident; evidence was introduced to show that just two weeks before this accident such extra wheels had been installed on the other side of the hoist; and Cadwell testified that accepted professional engineering standards mandated the inclusion of such extra wheels in the design of a hoist of this type.

■ We, therefore, conclude that Washington Mirror is entitled to full indemnification from Electric Motors on account of the breach of its implied warranty of the hoist's fitness.

The judgment on the verdict in favor of Coons, with his costs is affirmed; the judgments on the cross-claims are reversed and judgment will enter ordering Electric Motors to indemnify Washington Mirror, with its costs, for all dam-

ages due by Washington Mirror to Coons under the terms of the judgment in Coons' favor. The appeal by Electric Motors is denied.

## ON PETITION FOR REHEARING

### PER CURIAM:

By Petition for Rehearing the plaintiff-appellant, Coons, objects to that portion of the opinion which said that "counsel neither requested such a charge nor excepted to the charge as delivered. . . .; and points out that in the course of a discussion on a motion to strike between counsel and the judge in the robing room, his attorney did mention his position with regard to the propriety of drawing an inference from the failure of the defendant Washington Mirror to call as a witness Dr. Stella who had examined the plaintiff on its behalf. He said:

> "The argument is that they examined this man, and I say there is an inference, Your Honor, that if they do not produce him, that his testimony would be adverse to them. That is my objection, sir."

We are of the opinion, however, that this remark made in the course of an argument on a motion to strike certain rebuttal testimony by the plaintiff concerning some x-rays taken of him and delivered to Dr. Stella, was not sufficient notice to the trial judge of plaintiff's objection to the charge. Plaintiff's counsel's statement about the drawing of an inference was made in a context different from that of a discussion relating to the court's instructions to the jury. The very brief mention by plaintiff's counsel in the course of an argument on a motion to strike without any reference whatever to the jury charge makes it less than "clear that the trial judge understood the party's position." 5A Moore's Federal Practice ¶ 51.04, at 2521 (2d ed. 1971). The circumstances are not governed by Keen v. Overseas Tankship Corp., 194 F.2d 515 (2 Cir.), cert. denied, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363 (1952), on which appellant's counsel now relies.

As the opinion in this case made no specific mention of the robing room colloquy, the sentence commencing in line 3 from the bottom of page 866 of the opinion in this case is hereby amended to read as follows:

> "Plaintiff's counsel neither requested such a charge nor excepted to the charge as delivered, although he did briefly assert the propriety of the inference during a colloquy with Judge Levet on the exclusion of Coons' testimony concerning the x-rays. Because of counsel's failure to make clear to the trial judge that he was objecting to the charge, he is precluded from asserting it here, Rule 51 F.R.Civ.P., unless the omission constituted 'plain error.' Finn v. Wood, 178 F.2d 583, 584 (2 Cir. 1950)."

The opinion is in all other respects reaffirmed and the petition for rehearing is denied.